IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARON K. WATSON,<br><br>          Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner, Social Security<br>Administration,<br><br>          Defendant. | Case No. CIV-06-1337-HE |

## REPORT AND RECOMMENDATION

Sharon K. Watson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr."), and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative and Judicial Proceedings

In order to address Plaintiff's claims of legal error, a summary of previous administrative and judicial proceedings in this matter is necessary.

(1)     In October, 1995, Plaintiff filed applications seeking disability insurance benefits and supplemental income payments, alleging a September 12,

---

[1]Effective February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant in this action.

1992, onset of disability [Tr. 106 and 287]. The claims were denied at the State agency level, and Plaintiff received a requested hearing before an Administrative Law Judge in April, 1997 ("ALJ"). *Id.* The ALJ issued an unfavorable decision in December, 1997 [Tr. 106 - 109], and the Appeals Council denied Plaintiff's review request in March, 1999 [Tr. 112 - 113].

(2) The current applications were filed in May, 1999 with Plaintiff claiming that she became disabled as of December 27, 1997, due to knee, leg, foot, toe, left shoulder, finger and back pain with a resulting inability to stand on her feet or in any one place for a long period of time [Tr. 166 - 168, 186 and 274 - 276]. The claims were once again denied at the State agency level [Tr. 128 - 131, 133 - 135, 278 - 280 and 281 - 283]; another ALJ conducted a requested administrative hearing in May, 2001 [Tr. 58 - 102 and 336 - 384] and issued an unfavorable decision in June, 2001 [Tr. 152 - 154]. Plaintiff successfully appealed this result to the Appeals Council which remanded the matter by order of October, 2002 for evaluation of a possible mental impairment. *Id.*

(3) On October 15, 2001 – during the pendency of her request for review to the Appeals Council – Plaintiff filed new applications seeking disability insurance benefits and supplemental security income payments [Tr. 153]. The State agency determined that Plaintiff became disabled as of August 1, 2001. *Id.* Plaintiff testified at her most recent administrative hearing that she began receiving supplemental security income payments at that time

[Tr. 396].

(4)   In its October, 2002 order remanding the current applications, the Appeals Council stated that "[t]he State agency's determination suggests that there is new and material evidence with respect to the period on or before the date of the Administrative Law Judge's decision; however, the Appeals Council has been unable to obtain the subsequent claim file." [Tr. 153]. Accordingly, on remand, the ALJ was directed to launch a formal search for the subsequent claim file and to consider the State agency determination that Plaintiff became disabled as of August 1, 2001. *Id.* Following a new hearing on remand, the ALJ specifically affirmed the State agency's finding of disability commencing August 1, 2001 [Tr. 16 and 22] but denied Plaintiff's claim that she was disabled at any time from March 3, 1999,[2] to August 1, 2001 [Tr. 22]. The Appeals Council denied Plaintiff's request for review [Tr. 6 - 8], and Plaintiff subsequently appealed the decision to this court. United States District Judge Joe Heaton reversed the Commissioner's decision based on the failure of the ALJ to consider the impact of Plaintiff's obesity on her ability to perform her past relevant work [Tr. 300 - 308]. The Appeals Council, in turn, remanded the matter for hearing and decision by a new ALJ [Tr. 313].

(5)   The new hearing which resulted in the decision now before this court was held in November, 2005 [Tr. 385 - 416]. In her September, 2006 decision,

---

[2]Plaintiff orally amended her claimed date of onset during the administrative hearing [Tr. 32].

3

the ALJ found that Plaintiff retained the capacity to perform work existing in significant numbers in the economy and, accordingly, was not disabled[3] from March 3, 1999, through at least July 31, 2001 [Tr. 287 - 299]. The current appeal to this court followed that decision.

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

## Determination of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[3]The ALJ concluded that Plaintiff was severely impaired – but not disabled by – a "combination of degenerative changes of the cervical and lumbar spine; obesity; reports of osteoarthritis of the knees and ankles; a history of a motor vehicle accident in September 1998; borderline intellectual functioning; a personality disorder, not otherwise specified (with avoidant, schizoid, and dependent features); and a pain disorder, associated with both psychological factors and a general medical condition." [Tr. 291].

4

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she had one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity during the period in question, the burden of proof shifts to the Commissioner to show that she retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

### Plaintiff's Claims of Error

Plaintiff first alleges that "[t]he ALJ committed legal error by failing to apply Social Security Ruling 83-20 in determining the onset date of [Plaintiff's] disability." [Doc. No. 18, p. 6]. In connection with this argument, Plaintiff maintains that "[t]he ALJ erred as a matter of law by completely ignoring the applicability of SSR 83-20[,]" *id.* at 8, and that "[t]he ALJ erred by failing to obtain the testimony of a medical advisor to assist her in determining [Plaintiff's] onset date." *Id.* at 11. Through her second claim, it is Plaintiff's contention that "[t]he ALJ committed legal error by failing to apply the Medical-Vocational Guidelines to find [Plaintiff] disabled." *Id.* at 13.

### Analysis

### Social Security Ruling 83-20

Plaintiff maintains that she "suffered a combination of impairments; including obesity, borderline intellectual functioning, a personality disorder, and osteoarthritis which caused pain and other problems in her shoulders, hands, back, knees, legs, ankles, feet, and toes." [Doc. No. 18, p. 7]. She argues that because her "problems included impairments of progressive and nontraumatic origin, the ALJ was required to resolve the issue of the onset of [Plaintiff's] disability by the methods described in SSR 83-20." *Id.* at 7 - 8.

In the recent case of *Blea v. Barnhart*, 466 F.3d 906 (10th Cir. 2006), the court examined the question of when an ALJ is required to utilize Social Security Ruling 83-20, Program Policy Statement: Titles II and XVI: Onset of Disability (PPS-100), 1983 WL 31249 ("SSR-83-20"). The court explained that "SSR 83-20 is 'binding on all components of the Social Security Administration,' including ALJs, 20 C.F.R. § 402.35(b)(1), and sets forth an analytical framework for assessing the date of onset for a disability of traumatic or non-traumatic origin." *Id.* at 909. In connection with an alleged disability that is considered non-traumatic in origin – such as Plaintiff's – the court outlined the Ruling:

> SSR 83-20 states that "[i]n disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* [at 2]. The date alleged by the claimant is the starting point for determining disability onset, and the date the claimant stopped working is also of significance in selecting the onset date. *Id.* Medical evidence, however, is the "primary element" for the onset determination, as the onset date "can never be inconsistent with the medical evidence of record." *Id.* at 2 - 3.
>
> SSR 83-20 also provides that, when medical evidence does not establish the precise onset date, the ALJ may have to "infer the onset date from the

6

> medical and other evidence that describe the history and symptomatology of the disease process." *Id.* at 2. The regulation provides two examples of situations where it may be necessary to infer an onset date: (1) in the case of a slowly progressing impairment, "when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available," and (2) when "onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." *Id.* at 3. "At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred." *Id.*

*Id.* at 909 - 910 (footnote omitted).

In response, the Commissioner maintains that SSR 83-20 – which "states that onset date is the first day an individual is *disabled* as defined in the Act and the regulations" – does not apply here because the ALJ did not find Plaintiff to be disabled during the adjudicated period, March 3, 1999, through July 31, 1999 [Doc. No. 19, p. 6, emphasis added]. Thus, because a claimant must establish that she is disabled within the meaning of the Social Security Act in order to qualify for disability benefits, *see Blea*, 466 F. 3d at 908, the Commissioner argues that the provisions of SSR 83-20 were not triggered in this case. In reply, Plaintiff contends that "SSR 83-20 was very applicable to [Plaintiff's] case" because "[Plaintiff] had already been found disabled prior to the ALJ reviewing her case" and, consequently, "the main issue presented in her case is the question of when her disability actually began and whether her disability onset actually occurred prior to August 1, 2001, the date she was found disabled on a later application." [Doc. No. 20, p. 2]. In short, Plaintiff maintains that the State agency's determination of disability as of August 1, 2001, required this ALJ to utilize SSR 83-20 and a medical advisor to establish a possible earlier onset.

Regardless of whether SSR 83-20 is applicable here,[4] the need to infer an onset date with the services of a medical advisor is not automatically triggered under that Ruling by a finding of disability alone. Rather, under Tenth Circuit precedent, it is "where 'medical evidence of onset is ambiguous,' [that] an ALJ is obligated to call upon the services of a medical advisor." *Blea*, 466 F.3d at 911 (quoting *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995). As framed by the court in *Blea*, "the issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [Plaintiff's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of [Plaintiff's] conditions." *Id.* at 912. Or, as Plaintiff argues [Doc. No. 20, p. 4], it is "when there is no contemporaneous medical documentation [that] we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status." *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997); *Blea*, 466 F.3d at 911.

As demonstrated by the decision of the ALJ, there was ample contemporaneous medical evidence relating to Plaintiff's claimed disabling impairments and the possibility

---

[4]As noted in paragraph (4) in the summary of the administrative background of this matter, the Appeals Council in 2002 was aware that the State agency had made a determination of disability as of August 1, 2001, suggesting that there was new and material evidence in connection with the period before the date of the first unfavorable decision by an ALJ on the applications at issue here [Tr. 153]. The Appeals Council, having been unable to obtain the subsequent claim file, directed the ALJ on remand to undertake a formal search for the file or to obtain its reconstruction. *Id.* The ALJ was further directed to apply the provisions of the Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX"), Volume I-5-3-17, Section III, B-2, which governs Appeals Council consideration of an unfavorable disability determination by an ALJ when a subsequent application for disability benefits is granted while the appeal from the ALJ's decision is pending. [Defendant's HALLEX is internet accessible at http://www.ssa.gov/OP_Home/hallex/hallex.html]. On remand, the ALJ specifically affirmed the disability decision of the State agency, denied Plaintiff's claim that she was disabled at any time from March 3, 1999, to August 1, 2001, and thus necessarily concluded that no new or material evidence suggested disability for the period under review [Tr. 22]. *See* HALLEX, I-5-3-17, Section III, B-2. This finding by that ALJ does not appear to have been raised as error in any appeal.

of onset prior to the expiration of her insured status, the operative date specified by Plaintiff [Doc. No. 20, p. 4]. Less than four months from her claimed disability onset date of March 3, 1999, and only thirteen days after the expiration of her date last insured [Tr. 289], Plaintiff was examined by Sumit Mamun, M.D., [Tr. 242 - 248].[5] Plaintiff "reported pain in both knees since 1995 and ankle pain." [Tr. 292]. Dr. Mamun found some tenderness to the medial aspect of both knees but no swelling, warmth or redness. *Id.* Range of motion of the knees was normal with some pain; range of motion of the ankles was normal. *Id.* Plaintiff walked slowly but with a stable and otherwise normal gait. *Id.* Her grip strength was normal as were her reflexes. *Id.* Dr. Mamun diagnosed Plaintiff with osteoarthritis of both knees and ankles and with morbid obesity [Tr. 244].

In connection with Plaintiff's claim as to disabling mental limitations, the ALJ summarized the results of a consultative mental examination by R. Keith Green, Ph.D., in March, 2001:

> The claimant's affect was appropriate, and her mood was normal. Memory was normal, and her fund of knowledge was adequate. Her judgment appeared good in ordinary social situations. Thinking was clear and tended toward the concrete. She did not do well on serial subtractions. Using the Weschler Adult Intelligence Scale, revised edition, the claimant earned a verbal score of 76, a performance score of 75, and a full scale score of 75. She had adequate attention and concentration during testing, although she showed limited trial and error behavior. The Minnesota Multiphasic Personality Inventory, second edition, showed a profile of questionable validity, which, according to the psychologist, indicated that she tended to amplify or exaggerate symptoms. Nonetheless, the psychologist evaluated the test results. The psychologist assessed a pain disorder associated with both psychological factors and a general medical condition; borderline intellectual functioning; and a personality disorder, not otherwise specified

---

[5]Plaintiff argues without explanation that this July 13, 1999, medical documentation of her condition was not "contemporaneous" because the examination occurred some thirteen days after June 30, 1999, the date Plaintiff was last insured for disability benefits [Doc. No. 20, p.4].

9

(with avoidant, schizoid, and dependent features. The psychologist assessed only "slight" limitations in work-related mental activities except for a "moderate" restriction in understanding and carrying out complex instructions.

[Tr. 293].

Thus, contrary to Plaintiff's argument that "there was only inadequate, inconclusive, and ambiguous medical evidence related to [Plaintiff's] osteoarthritis and mental impairments prior to and shortly after her date last insured[,]" [Doc. No. 18, p.12], there is *no* indication from these medical records that Plaintiff was suffering from *disabling* physical or mental impairments around the time of her date last insured or, in other words, that she would be unable to engage in substantial gainful employment during this time period. Dr. Mamun found Plaintiff's knee joints to be stable with only "some" tenderness when palpated; her passive range of motion was normal in both knees with pain only when fully flexed to 150 degrees; her passive range of motion was within normal limits in both ankles; and, her unassisted gait was slow but stable [Tr. 243 - 244]. Likewise, there is no medical evidence of any disabling mental impairment at *any* time. As Judge Heaton observed on Plaintiff's previous appeal to this court,

> [T]he *only* pertinent medical evidence of the plaintiff's mental impairments consisted of the psychological report prepared by Dr. Green and his assessment of the plaintiff's ability to engage in work-related activities. He discounted the *vocational* significance of the plaintiff's mental impairments by almost uniformly rating as "slight" the degree of occupational/performance/social adjustments she would have to make to work on a daily basis.

[Tr. 301 (emphasis added)].[6] The ALJ did not commit legal error by failing to apply SSR

---

[6]In maintaining that Plaintiff suffered from "work-related mental limitations" [Doc. No. 18, p. 10], Plaintiff argues that the ALJ ignored "probative vocational evidence" from a former part-time employer that
(continued...)

83-20 in this case.

### The Medical-Vocational Guidelines

The Medical- Vocational Guidelines – commonly called the "grids" – consist of tables of rules which direct a finding of disabled or not disabled based on a claimant's exertional capability, age, education and work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2. Plaintiff maintains that the ALJ committed legal error by failing to apply the grids to find Plaintiff disabled "since she met all of the criteria of Grid Rules 201.12 and/or 201.14." [Doc. No. 18, p. 13]. Grid Rules 201.12 and 201.14 are both applicable to those individuals whose maximum sustained work capability is limited to sedentary work, *see* 20 C.F.R. Pt. 404, Subpt. 2, Appendix 2, Table 1, and it is Plaintiff's claim that since the ALJ found that Plaintiff could only stand/walk for a maximum of four hours per workday [Tr. 294], her "RFC[7] actually limited her to sedentary work" and, consequently, to a finding of "disabled" under Grid Rules 201.12 and 201.14. [Doc. No. 18, p. 14]. In advancing this argument, Plaintiff relies on Social Security Ruling 83-10, Program Policy Statement: Titles II and XVI: Determining Capability to Do Other Work - - The Medical-Vocational Rules of Appendix 2 (PPS-101), 1983 WL 31251 ("SSR-83-10") which provides that the "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* at *6.

---

[6](...continued)
Plaintiff was "handicapped mentally," was "incapable of making independent decisions and working without total supervision," and "has an anger problem and has a difficulty staying on task." *Id.* These lay conclusions are inconsistent with Dr. Green's medical evidence; "[t]he impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record." SSR 83-20, 1983 WL 31249, at *3.

[7]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 405.1545 (a) (1), 416.945 (a) (1).

11

The Commissioner, on the other hand, asserts that the ALJ did not determine that Plaintiff had the RFC to perform a *full* range of light work – thus requiring "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[,]" *id.*, but rather found that she had the RFC to perform a *reduced* range of light work [Doc. No. 19, p. 11]. Accordingly, neither Grid Rule 201.12 nor Grid Rule 201.14 – rules pertaining to those individuals whose maximum sustained work capability is limited to sedentary work – apply. In support of his argument, the Commissioner also relies on SSR 83-10 which provides that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10, at *5. Consequently, the argument continues, Plaintiff's ability to stand/walk for four hours per workday is consistent with a reduced range of light work rather than with sedentary work and the grid rules pertaining to sedentary work are inapplicable.

The undersigned agrees with the Commissioner on this point. The ALJ's assessment that Plaintiff has the ability to stand/walk for four hours per workday clearly exceeds the two hour period prescribed for sedentary work, and the ALJ did not commit legal error by failing to apply grid rules relating an individual whose maximum sustained work capability is limited to sedentary work.[8]

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and

---

[8]While Plaintiff exercised her option to file a reply brief [Doc. No. 20], her brief neither addressed the Commissioner's response to this proposition nor provided additional argument to assist the court in making its determination.

Recommendation by October  9th , 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this  19th  day of September, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE